UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>v.<br><br>FBS TIRE RECYCLING, INC.,<br><br>Defendants. | Case No. 1:23-cv-10778 |

## CONSENT DECREE

WHEREAS, FBS Tire Recycling, Inc. ("FBS" or the "Company") operates a tire recycling facility at 50 Berkshire Boulevard, Ayer, Massachusetts (Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that FBS has discharged industrial stormwater from the Facility into adjacent creeks and wetlands without complying with its federal Multi-Sector General Permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. §§1251–1387 (the "Clean Water Act" or "the Act") and did not monitor and control stormwater discharge from all outfalls from the Facility as required by the Stormwater Permit;

WHEREAS, by letter dated March 15, 2022, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against FBS ("Notice Letter") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department

of Environmental Protection ("DEP"); and to FBS, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. §1365;

WHEREAS, FBS asserts that before receipt of the Notice Letter, it had operated its Facility in a manner that it believed complied with its Stormwater Permit, by taking actions including but not limited to:

(i) engaging an environmental and engineering firm (the "Firm") to assist with FBS's Stormwater Permit compliance, which included actions such as assessing the drainage and outfalls at the Facility, developing a Stormwater Pollution Prevention Plan ("SWPPP") for the Facility, submitting stormwater sampling results and notifications to the EPA; and conducting a stormwater analytical trend analysis of FBS's historical quarterly sampling results to better understand the source areas and contributing factors to the benchmark exceedances at the Facility;

(ii) implementing corrective actions in response to benchmark exceedances, including but not limited to: sweeping the Facility more frequently, closing open containers, cleaning out catch basins, and coordinating with the Firm to identify additional measures that could improve stormwater sampling results;

(iii) removing a large stockpile of tire rubber chips with a high concentration of tire wire located northwest of the Facility building that had been left over from when FBS purchased the Facility in 2018;

(iv) eliminating the tire wire removal system, which prevented tire wire from being collected outside of the building in open top containers and on the ground;

2

(v)     removing approximately 18,000,000 pounds of scrap tires, tires with rims, tire shreds, and metal debris from the hill behind the Facility; and

(vi)    stabilizing steep slopes at the Facility to reduce erosion.

WHEREAS, following receipt of the Notice Letter, FBS undertook a number of actions at the Facility, including:

(i)     agreeing to list and begin sampling an additional outfall to be covered by the Stormwater Permit, which FBS anticipates sampling during the second quarter of 2023; and

(ii)    taking other measures to reduce benchmark monitoring sample results including cleaning of swales, increased sweeping and catch basin cleaning, and engaging the Firm to develop a scope of work and sampling plan to determine the sources of stormwater pollution that identifies potential effective structural source controls and/or treatment options at the Facility.

WHEREAS, FBS anticipates that these steps, together with implementation of the measures set forth herein and in the SWPPP for the Facility, will ensure compliance with the requirements of the Clean Water Act into the future.

WHEREAS, today the Attorney General filed a complaint against FBS in the United States District Court, District of Massachusetts (the "Complaint");

WHEREAS, FBS does not admit any liability or wrongdoing arising out of the facts or laws referenced or alleged in the Notice or Complaint;

WHEREAS, the Commonwealth and FBS (collectively, the "Parties") have reached an agreement to fully resolve this dispute; and

3

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law, it is ADJUDGED, ORDERED, AND DECREED, as follows:

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2.      The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## III. EFFECTIVE DATE

3.      The effective date of this Consent Decree shall be when the Court enters the Consent Decree on the docket ("Effective Date").

## IV. PARTIES BOUND

4.      This Consent Decree shall constitute a binding agreement between the Parties, and FBS consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it,

the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and FBS agree otherwise in writing within fourteen (14) days of the Court's decision.

5.    The provisions of this Consent Decree shall apply to and bind FBS and any person or entity acting by, for, or through FBS, including FBS's managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with FBS who receive notice of this Consent Decree.

6.    FBS shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. FBS shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and shall condition any such contract, entered into after the Effective Date of the Consent Decree, on the contractor's performance of the work in compliance with the terms of this Consent Decree. For any such contract entered into prior to the Effective Date, FBS shall ensure that the contractor performs its work in compliance with the terms of this Consent Decree.

7.    For three (3) years following the Effective Date, FBS shall provide written notice of any prospective change or transfer in ownership of its business, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within three (3) years following the Effective Date, FBS shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this

5

Paragraph or otherwise, shall relieve the Defendant or its managers, officers, directors, agents, successors, assigns, heirs, and/or servants of any obligation under this Consent Decree, unless:

    a.    the transferee agrees, in writing, to undertake any outstanding obligations required by Section V (Payments), Section VI (Injunctive Relief), and Section VII (Facility Access and Submission of Records) and to be added as a Defendant or substituted for the Defendant as a Party under the Consent Decree and thus assume the obligations, rights, and benefits of, and be bound by, its terms;

    b.    the Commonwealth agrees to consent, in writing, to relieve the Defendant of its obligations under the Consent Decree; and

    c.    the transferee becomes a party under this Consent Decree pursuant to Section XV (Modification).

Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

8.    FBS shall not violate this Consent Decree, and FBS shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, FBS shall not raise as a defense the failure by any of FBS's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.    In addition to any relief specifically provided in this Consent Decree, FBS understands and agrees that violations of this Consent Decree may by punishable by contempt pursuant to an appropriate civil contempt proceeding.

## V. PAYMENTS

10.    Within fifteen (15) days of the Effective Date, FBS shall pay to People of Ayer Concerned About the Environment, Inc. ("PACE") the sum of sixty-two thousand dollars ($62,000) to fund projects to improve water quality in the Merrimack and Nashua River Watersheds. Evidence of FBS's payment to PACE shall be contemporaneously provided by FBS to the Commonwealth pursuant to Section XIII (Notices). Payments should be made by wire transfer referencing this action to the following account:

People of Ayer Concerned About the Environment, Inc.



11.    Within ten (10) days of the Effective Date, FBS shall reimburse the Attorney General's Office in the amount of thirty-five thousand dollars ($35,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by wire transfer referencing this action to the following account:

Commonwealth of Massachusetts, Office of Attorney General



and shall include the following in the payment information: "EPD, *Commonwealth v. FBS Tire Recycling, Inc. - Costs.*" Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Defendants shall send notice, by electronic mail, that such payment has been made to the Commonwealth to Emily

Mitchell Field, Environmental Protection Division at emily.field@mass.gov and shall include all of the payment information stated in this Paragraph in addition to the amount of the payment.

### VI. INJUNCTIVE RELIEF

12. FBS agrees to operate the Facility in compliance with the applicable requirements of the currently applicable Stormwater Permit, including any amendments thereto or reissuances thereof, and with the Federal Clean Water Act.

13. Stormwater Discharge Associated with Industrial Activity

   a. *Additional Pollutant Control Measures.* FBS will direct and control Stormwater Discharges Associated with Industrial Activity at the Facility to minimize pollutants "to the extent achievable using control measures (including best management practices) that are technologically available and economically practicable in light of best industry practice" pursuant to Stormwater Permit Section 2. FBS will take the following actions by the following dates:

      i. By October 30th, 2023, the Company shall notify DEP of its intent to remove tire fragments, the location of which are depicted in Exhibit A, from the Facility. The Company shall remove the tire fragments by July 1, 2024, provided DEP has no objection to the removal of the tires. Should DEP object to the removal of the tires, then the Parties shall meet and confer to determine an alternative date by which the tires shall be removed;

      ii. Within one (1) month of the Effective Date, the Company shall develop a plan to meet the additional implementation measure response requirements as set forth in Stormwater Permit Section 5.2; and

8

iii.  Within three (3) months of the Effective Date, the Company shall implement its plan to meet the additional implementation measure response requirements as set forth in Stormwater Permit Section 5.2.

b.  *Monitoring.*

i.  Per the Stormwater Permit, FBS shall monitor Stormwater Discharges Associated with Industrial Activity through the Outfalls identified and described in FBS's Notice of Intent and SWPPP. *See* Stormwater Permit Section 4. All reporting of monitoring results shall be certified by an authorized person, in compliance with Section G of Appendix M of the 2021 Stormwater Permit. In addition to the Stormwater Permit requirements, FBS shall prepare video recordings of the sampling events occurring during the first full quarter after the Effective Date, as set forth in Stormwater Permit Section 4.1.7, after all Outfalls are accessible, for its stormwater discharges, and shall provide the Attorney General's Office with copies of such video recordings in accordance with Section XIII (Notices), below. The video recordings shall include an accurate record of the time and date on which they were recorded. Each video shall make clear and evident, through visual imagery:

(i)    the date and time on which it was recorded,

(ii)   the location or locations at which it was recorded,

(iii)  the persons present during the sampling,

(iv)   the location of the pipe or conduit being sampled from,

9

(v)    the manner in which each sample is taken, and

(vi)    the sample or samples taken.

If the video imagery is insufficient to verify items (i)-(vi) above, then the Attorney General's Office will have the right to be present during or require the video recording of another representative sampling event in a subsequent calendar quarter of its choosing.

## VII. FACILITY ACCESS AND SUBMISSION OF RECORDS

14.    FBS shall permit the Attorney General's Office to visit the Facility during normal daylight business hours for three (3) years following the Effective Date, provided that the Attorney General's Office provide at least twenty-four (24) hours of prior notice. During any Facility visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be maintained pursuant to the Stormwater Permit and may collect samples and take photos at the Facility.

15.    For a period of three (3) years following the Effective Date, FBS shall provide the Attorney General's Office with the following documents in accordance with Section XIII (Notices), below:

a. copies of all documents FBS submits to EPA, the Commonwealth, and/or the Town of Ayer concerning FBS's stormwater controls or the quality of FBS's Stormwater Discharges Associated with Industrial Activity, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity;

b. laboratory reports and analytical results of stormwater sampling performed by or for FBS within two (2) weeks of receiving the reports; and

10

c.  written notice of any changes made to any of FBS's stormwater control measures that are described in the SWPPP pursuant to Stormwater Permit Section 6.2.4, within two (2) weeks of completion.

16.  For a period of three (3) years following the Effective Date, within ten (10) days of receiving a written request by the Attorney General's Office, FBS shall provide the Attorney General's Office with the following documents in accordance with Section XIII (Notices), below:

a.  all maintenance records for the Facility's stormwater pollution control systems;

b.  all written material, including Power Point presentations, associated with any trainings referenced in the Company's SWPPP;

c.  current copies of FBS's SWPPP.

17.  Any information provided by FBS may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

18.  The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of FBS to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII.  INTERESTS AND COLLECTIONS

19.  If any payment required pursuant to this Consent Decree is late or not made, FBS shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum computed monthly and shall pay all reasonable expenses associated

11

with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

### IX. EFFECT OF CONSENT DECREE

20. Upon compliance by FBS with the requirements of this Consent Decree, (a) this Consent Decree shall fully resolve FBS's liability for the specific legal claims alleged against it in the Notice and Complaint, and (b) the Commonwealth shall fully release FBS from liability for the specific legal claims alleged against it in the Notice and Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

21. Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by FBS, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by DEP or EPA relative to the Facility.

22. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. FBS is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and FBS's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in

any manner that FBS's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

23.    Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

## XII. MISCELLANEOUS

24.    FBS understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that FBS may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

25.    FBS shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against it.

26.    Nothing in this Consent Decree shall prevent FBS from taking any action otherwise required by law.

27.    The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

28.    In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

29.    FBS is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

30.    Signature of the parties transmitted by scanning and email are binding.

## XIII. NOTICES

31.    Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

13

For the Attorney General's Office and the Commonwealth:

Emily Mitchell Field
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Emily.Field@mass.gov

For FBS:

Frank Schofield
President, FBS Tire Recycling, Inc.
265 Ayer Road,
Littleton, MA 01460
frank.schofield@fbstirerecycling.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

## XIV. INTEGRATION

32.     Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XV. MODIFICATION

33.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph. Minor modifications

14

of the preliminary plans attached hereto shall not constitute a material change for purposes of this Paragraph.

## XVI. AUTHORITY OF SIGNATORY

34.    The person signing this Consent Decree on behalf of FBS acknowledges: (a) that they have personally read and understand each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that they are authorized to sign and bind FBS to the terms of this Consent Decree, and (c) that, to the extent necessary, FBS managers, directors, officers, and shareholders have consented to FBS entering this Consent Decree and to its entry as a Final Judgment.

## XVII. RETENTION OF JURISDICTION

35.    The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

36.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

15

OFFICE OF THE ATTORNEY GENERAL
ANDREA JOY CAMPBELL, ATTORNEY GENERAL

By: _EFiell_
Emily Mitchell Field
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18ᵗʰ Floor
Boston, MA 02108
617-963-2207
Emily.Field@mass.gov

Dated: April 12, 2023


FBS Tire Recycling, Inc.

By: _Frank Schofield_
66D1B3B64492417...

Frank Schofield
President, FBS Tire Recycling, Inc.
265 Ayer Road,
Littleton, MA 01460
frank.schofield@fbstirerecycling.com

Dated: 4/11/2023


IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_Richard G. Stearns_

United States District Court

Dated:    5-31-23.

16

